```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
TRIUMPH CONSTRUCTION CORP.,                                 :
                                                            :
                                    Petitioner,             :         12 Civ. 8297 (KPF)
                                                            :
                        v.                                  :         OPINION AND ORDER
                                                            :
THE NEW YORK CITY COUNCIL OF                                :
CARPENTERS PENSION FUND, et al.,                            :
                                                            :
                                    Respondents.            :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 8, 2014

KATHERINE POLK FAILLA, District Judge:

In its July 3, 2014 Order and Opinion (Dkt. #50, the "July 3 Order"), this Court denied the motion for summary judgment of Triumph Construction Corporation ("Petitioner"), and granted the motion for summary judgment of the New York City District Council of Carpenters and its associated fringe benefit funds (collectively, "Respondents"). The Court also found that Petitioner was bound to the terms of the parties' collective bargaining agreement ("CBA") that entitle Respondents to attorneys' fees and costs incurred in connection with the instant litigation. Accordingly, the Court directed Respondents to submit a fee application, which is currently pending before the Court. For the reasons set forth in this Opinion, the Court grants Respondents' application in part, finding that certain reductions are appropriate.

**BACKGROUND**[1]

The parties have been engaged in a four-years-long dispute stemming from Petitioner's refusal to allow Respondents to complete an audit, started in May 2010, of Petitioner's records. (July 3 Order 7). The facts and procedural history relevant to that battle are set forth in the July 3 Order; only the facts and procedural history pertinent to the instant application are described here.

**A.   Procedural History Relevant to the Fee Application**

In September 2012, Respondents served Petitioner with a Notice of Intent to Arbitrate. (July 3 Order 8).[2] On October 16, 2012, Petitioner filed suit in state court seeking to stay the arbitration. (*Id.*; *see also* Bauman Decl. ¶ 3). After review and discussion of the state court petition to stay arbitration, Respondents removed the proceeding to this Court on November 14, 2012. (Bauman Decl. ¶ 3). Counsel prepared for and attended an initial pretrial conference on January 31, 2013, at which a discovery schedule was set. (*Id.*; Dkt. #4). On February 11, 2013, Respondents filed an Answer and Counterclaim, seeking an order compelling Petitioner to submit to arbitration. (Bauman Decl. ¶ 3; Dkt. #5). The parties conducted discovery from approximately April 2013 to June 2013. (Bauman Decl. ¶ 3). During that

---

[1]   The parties' submissions are referred to in this Opinion as follows: Respondents' Application for Attorneys' Fees as "Resp. Br." (Dkt. #52); Respondents' supporting Declaration of Michael Bauman as "Bauman Decl." (Dkt. #53); and Petitioner's opposition as "Pet. Opp." (Dkt. #59). This Opinion also refers to the Declaration of Luke Powers, which was filed in support of Respondents' motion for summary judgment, as "Powers Decl." (Dkt. #26).

[2]   This was Respondents' second such notice related to these underlying facts; the first had been served in August 2010. (July 3 Order 7). As with the second notice, Petitioner filed suit in state court seeking to stay the arbitration, and Respondents removed. (*Id.*). The parties ultimately voluntarily dismissed that first action. (*Id.*).

time, the parties exchanged document requests and interrogatories, and took two depositions. (*Id.*). After two fruitless settlement conferences, the parties filed cross-motions for summary judgment as to whether the dispute was subject to arbitration; the motions were fully briefed on January 14, 2014. (July 3 Order 8).

On July 3, 2014, the Court rejected Petitioner's motion and granted summary judgment in Respondents' favor. (July 3 Order 1). In granting Respondents' motion, the Court determined, *inter alia*, that Petitioner was bound to the parties' CBA, and that Respondents were accordingly entitled to attorneys' fees and costs. (*Id.* at 43-44). On July 30, 2014, Respondents filed the instant fee application and papers in support; Petitioner opposed on October 8, 2014.

**B.    The Fee Application**

Respondents' instant application seeks fees for work done in the period following the filing of the state court action, starting on October 22, 2012. (*See* Bauman Decl. Ex. A at 1). Respondents seek remuneration for work done by two attorneys — one of counsel and one associate — and various legal assistants at the law firm of Virginia & Ambinder ("V&A"). The V&A of counsel, Nathan Bishop, is a 1998 graduate from New York University School of Law and has practiced exclusively in the area of labor and employment benefits law since 2000. (*Id.* at ¶ 5). V&A billed Bishop's time at an hourly rate of $250.00 to $300.00 for work performed in connection with this action. (*Id.*). Respondents seek payment for 231.4 hours of time billed by Bishop for work

done from October 22, 2012, to July 8, 2014, which includes the instant fee application. (*See id.* at Ex. A). The V&A associate, Michael Isaac, is a 2007 graduate of Rutgers University School of Law – Newark, and has also regularly represented multiemployer benefit plans in ERISA litigation. (*Id.* at ¶ 6). V&A billed Isaac's time at an hourly rate of $225.00 for work performed in connection with this action. (*Id.*). Respondents seek payment for 8.8 hours of time billed by Isaac during the month of July 2014, only for work done on the instant fee application. (*See id.* at Ex. A). V&A billed legal assistants' time at an hourly rate of $90.00 to $100.00, and seeks remuneration for 11.2 hours of legal assistants' time, for various tasks performed from November 2012 to January 2014. (*Id.* at ¶ 7, Ex. A). Respondents seek professional fees in the amount of $62,615.00 (*id.* at ¶ 10), and costs in the amount of $1,458.33 (*id.* at ¶ 11), for a total award of $64,073.33. Petitioner disputes the award sought on various grounds.

## DISCUSSION

The Court has already determined that Respondents are entitled to attorneys' fees. Thus, the only issue before the Court is whether Respondents' requested fees are "reasonable." While the Court finds that Respondents' hourly rates are reasonable, the Court also finds that several reductions to the number of compensable hours (and, by extension, the overall requested award) are appropriate. First, the Court declines to grant fees related to two settlement conferences, on the ground that such fees were not "reasonably expended." Second, the Court declines to grant Respondents fees associated

with preparing and filing the instant application. Third, the Court makes a 15% cut in the requested fees to "trim the fat."

## A. Applicable Law

"Both [the Second Circuit] and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" *Millea* v. *Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc.* v. *County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008), and citing *Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53 (2010)). While the lodestar is not always conclusive, its presumptive reasonability means that it is a "starting point" for a district court's analysis of whether a requested fee award is reasonable. *Id.* at 166.

A "reasonably hourly rate" is "the rate a paying client would be willing to pay," keeping in mind "all of the case-specific variables that [courts] have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190. *Arbor Hill* specifically identified the following factors to be considered in determining what a reasonable, paying client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that

with preparing and filing the instant application. Third, the Court makes a 15% cut in the requested fees to "trim the fat."

**A.     Applicable Law**

"Both [the Second Circuit] and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" *Millea* v. *Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc.* v. *County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008), and citing *Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53 (2010)). While the lodestar is not always conclusive, its presumptive reasonability means that it is a "starting point" for a district court's analysis of whether a requested fee award is reasonable. *Id.* at 166.

A "reasonably hourly rate" is "the rate a paying client would be willing to pay," keeping in mind "all of the case-specific variables that [courts] have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190. *Arbor Hill* specifically identified the following factors to be considered in determining what a reasonable, paying client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that

> a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Id.* at 184.[3]

Additionally, "[a]ccording to the forum rule, courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Simmons* v. *N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal citations and quotation marks omitted). Finally, "'the actual billing arrangement is a significant, though not

---

[3]   *Arbor Hill* also instructed district courts to look to the 12 factors set forth by the Court of Appeals for the Fifth Circuit:

> [i] the time and labor required; [ii] the novelty and difficulty of the questions; [iii] the level of skill required to perform the legal service properly; [iv] the preclusion of employment by the attorney due to acceptance of the case; [v] the attorney's customary hourly rate; [vi] whether the fee is fixed or contingent; [vii] the time limitations imposed by the client or the circumstances; [viii] the amount involved in the case and the results obtained; [ix] the experience, reputation, and ability of the attorneys; [x] the "undesirability" of the case; [xi] the nature and length of the professional relationship with the client; and [xii] awards in similar cases.

*Id.* at 186 n.3 (citing *Johnson* v. *Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)). After *Arbor Hill* was decided, the Supreme Court rejected use of the *Johnson* factors as a singular method of calculating attorneys' fees in favor of the lodestar method, which it found more objective and predictable. *Perdue*, 559 U.S. at 550-53. However, as courts in this Circuit have noted, *Arbor Hill*'s instruction to take the *Johnson* factors into account when determining the reasonable hourly rate is not at odds with the Supreme Court's preference for the lodestar method expressed in *Perdue*. *See, e.g.*, *Friedman* v. *Sharinn & Lipshie, P.C.*, No. 12 Civ. 3452 (FB) (CLP), 2013 WL 1873302, at *8-9 & n.11 (E.D.N.Y. Mar. 28, 2013) (collecting cases), *report and recommendation adopted*, 2013 WL 1869924 (E.D.N.Y. May 3, 2013); *G.B. ex rel. N.B.* v. *Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 427-28 & n.11 (S.D.N.Y. 2012). Indeed, application of the *Johnson* factors to determine a reasonable rate dovetails nicely with the Supreme Court's instruction to take into account all the "relevant factors" in setting a reasonable rate. *See Perdue*, 559 U.S. at 553 ("[T]he lodestar includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." (internal citation and quotation marks omitted)); *see also Millea*, 658 F.3d at 166 (citing to both *Perdue* and *Arbor Hill* in support of the lodestar calculation creating the presumptively reasonable fee); *Konits* v. *Karahalis*, 409 F. App'x 418, 422-23 (2d Cir. 2011) (summary order) (continuing to apply *Johnson* factors pursuant to *Arbor Hill* in reviewing district court's determination of reasonable hourly rate).

necessarily controlling, factor' in determining a reasonable fee." *Erchonia Corp. v. Bissoon*, No. 07 Civ. 8696 (DLC), 2010 WL 2541235, at *2 (S.D.N.Y. June 15, 2010) (quoting *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001)); *see also Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544-45 (S.D.N.Y. 2008) (finding evidence of fees actually charged instructive in determining reasonable hourly rate).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). To aid in calculating the lodestar, the prevailing party must provide contemporaneous time records, affidavits, and other materials to support its application for the amount of reasonable hours expended. *McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. Fee requests should be reduced to exclude hours that are not "reasonably expended," such as those that are excessive or redundant. *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Hensley*, 461 U.S. at 434); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (finding the district court must engage in a "conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended"); *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 301 (S.D.N.Y. 2001) ("Attorneys should not be reimbursed for inefficiencies, duplication or excessive

7

submissions."). An across-the-board percentage cut can be employed when a fee reduction is appropriate, but fee petitions are voluminous and item-by-item review is impracticable. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237-38 (2d Cir. 1987).

**B.    Analysis**

**1.    Respondents' Hourly Rates Are Reasonable**

In support of its application, Respondents have submitted copies of V&A's contemporaneous time records, setting forth the firm's customary hourly rates and detailing the time spent on tasks related to this litigation (Bauman Decl. Ex. A), as well as an attorney declaration setting forth the qualifications of each billing attorney (*id.* at ¶¶ 5-6). The time records are organized by lawyer and the time is billed in six-minute increments. Respondents contend that the rates and hours as reflected in these records are reasonable because they are consistent with the actual billing arrangement, they are consistent with prevailing local rates, and they are consistent with the attorneys' experience and ability. (Resp. Br. 4-6). Petitioner responds that the rates are unreasonable because the lead attorney's hourly fee was "inflated," V&A has charged less in past ERISA litigation, and the nature of the work did not merit the rates charged. (Pet. Opp. 5-6). The Court finds that Respondents' proposed hourly rates are reasonable because (i) they reflect rates that were actually paid; (ii) they are typical of those charged by attorneys and legal staff with commensurate skill and experience in the Southern District of New York; and (iii) they are in line with relevant case-specific factors.

First, V&A has requested fees at the hourly rate it actually charged Respondents for its representation in this litigation. As noted above, V&A charged an hourly rate of $250.00 to $300.00 for of counsel Nathan Bishop; $225.00 for associate Michael Isaac; and $90.00 to $100.00 for legal assistants. (Bauman Decl. ¶¶ 5-7). These are V&A's customary rates for senior attorneys, associate attorneys, and legal assistants. (*Id.*; *see also* Resp. Br. 4). That the fees requested equal the amount actually billed to Respondents is a strong indicator that those fees are reasonable. *See Crescent Publ'g Grp., Inc.*, 246 F.3d at 151 (finding that while the billing agreement with a particular client is "not necessarily controlling" in determining a reasonable fee, it is "strong indication of what private parties believe is the 'reasonable' fee to be awarded").

Second, courts in this District have approved similar or higher rates for non-partner attorneys with experience equal to or less than Bishop in ERISA cases. *See, e.g.*, *Gesualdi* v. *Laws Constr. Corp.*, No. 09 Civ. 1067 (DLC), 2013 WL 1155416, at *2 (S.D.N.Y. Mar. 21, 2013) (finding of counsel's rate of $375 was reasonable in ERISA litigation); *Sheehan* v. *Metro. Life Ins. Co.*, 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (allowing an hourly rate of $300 for three associates "in the absence of any proof of their experience"); *N.Y. Dist. Council of Carpenters Pension Fund* v. *Perimeter Interiors, Inc.*, 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (finding that rates of $425.00 per hour for partners, $300.00 per hour for associates, and $150 per hour for paralegals were "in line with prevailing rates in the [S.D.N.Y.] community for similar services of

9

reasonably comparable skill, expertise and reputation" (citation and alterations omitted)). Petitioner's suggestion that because Bishop is not a partner he should be held to an associate's rate (Pet. Opp. 5-6), is unavailing: Bishop has the seniority and experience to be billed at a higher rate.[4] Because, as discussed below, the Court does not award fees associated with preparing the instant application, and Respondents only seek associate Isaac's time billed in preparing the instant application, the Court need not separately consider the reasonableness of his hourly rate.

Finally, the Court has considered other relevant factors in *Arbor Hill* and *Johnson*. On the one hand, this case was arguably not challenging or novel, in that it involved a longstanding contract dispute in which counsel was already well-versed, with no particularly unusual timing demands on the case. On the other hand, the case was arguably complex, in that it involved multifaceted contractual relationships, factual and legal disputes regarding the applicability of various provisions, and hard-fought discovery and motion practice by the parties. Additionally, V&A achieved a successful result for their clients, and the lead attorney has 16 years' experience as a lawyer and 14 years' experience litigating cases involving labor and employment benefits law. On the whole, these factors militate in favor of finding the proposed hourly rates — which are already in line with rates in this District — to be reasonable.

---

[4] The Court also notes that the cases Petitioner cites in arguing for an hourly rate of $200.00 for associate time are all in the Eastern, not Southern, District of New York, which may well have a different prevailing rate. (*See* Pet. Opp. 5-6).

10

Based on the foregoing, the Court concludes that the requested hourly rates are appropriate.

### 2. Some Hours-Related Reductions Are Appropriate

#### a. Fees Associated with Settlement Conferences Are Denied

Because it appears to the Court that Respondents did not attend the two settlement conferences before the Magistrate Judge in good faith, the Court agrees with Petitioner that it would be unreasonable to require Petitioner to pay the associated fees. At the first conference, Respondents' counsel did not appear with their client even though they had been directed to do so by the Court; this meant that the conference had to be rescheduled. (Pet. Opp. 5). At the second, rescheduled conference, despite having previously represented to both Petitioner and the Court a willingness to settle, Respondents maintained that there was no possibility of settlement. (*Id.*).

Respondents wasted both the Court's and Petitioner's time in feigning interest in settlement discussions. Given these circumstances, the Court finds that hours spent in connection with the settlement conferences were not "usefully and reasonably expended." *Lunday*, 42 F.3d at 134; *see also Reiter* v. *Metro. Transp. Auth. of N.Y.*, No. 01 Civ. 2762 (GWG), 2007 WL 2775144, at *11-12 (S.D.N.Y. Sept. 25, 2007) (finding that time spent on certain motions would not be included in fee award where, although they were not entirely baseless, they were not reasonably brought and were "simply unnecessary"). Moreover, a reasonable client would not pay hourly fees for the preparation for and attendance of a settlement conference where that client had no intention of

11

settling.  *Cf. In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 391 (S.D.N.Y. 2013) (finding that "few private clients paying hourly fees would absorb the cost of [] unabated work" after parties had reached settlement terms on discovery-related work such as document review and striking such time from fee award (citation omitted)), *appeal withdrawn* (Dec. 23, 2013), *appeal withdrawn* (Jan. 14, 2014).  Therefore, in accordance with Petitioner's request and the Court's independent review of the billing records, the Court will deduct $1,525.00 from the amount sought, representing a deduction of the 6.1 hours expended in connection with the settlement conferences.

      **b.**     **Fees Associated with the Instant Application Are Denied**

Likewise, the Court agrees with Petitioner that costs associated with the instant application for attorneys' fees should be denied because the CBA between the parties does not call for such fee-shifting.  Under New York law, "a general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves"; rather, there must be "specific language to indicate that time spent in justifying a fee application was to be included."  *F.H. Krear & Co.* v. *Nineteen Named Trs.*, 810 F.2d 1250, 1266-67 (2d Cir. 1987) (applying New York law and reversing district court's grant of fees associated with fee application where general contract provision for attorneys' fees did not specifically provide for such fees); *see also St. Paul Mercury Ins. Co.* v. *M & T Bank Corp.*, No. 12 Civ. 6322 (JFK), 2014 WL 1468452, at *5 (S.D.N.Y. Apr. 11, 2014) (declining to award fees associated with preparing fee application where contract contained no "specific

language" for such fees (citing *F.H. Krear & Co.*, 810 F.2d at 1267)); *Trs. of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(K) Sav. Plan* v. *Temperin Mech., Inc.*, No. 12 Civ. 5646 (ILG), 2014 WL 4678025, at *3 (E.D.N.Y. Sept. 19, 2014) ("[Regardless of the reasonableness of the amount sought], the [Plaintiffs] are not entitled under ERISA or the CBA to attorneys' fees for the time spent seeking the fees themselves.").

The CBA that entitles Respondents to attorneys' fees does not provide "specific language" providing for fees incurred in seeking fees. (*See* Powers Decl. Ex. K at 12). Respondents are therefore not entitled to fees for the nine hours of work expended on the instant application, amounting to $2,000.00 in all. (Bauman Decl. Ex. A). The Court will accordingly deduct $2,000.00 from the total amount sought.

### c. A 15% Overall Reduction in Fees Is Warranted

The Court will impose a 15% reduction from Respondents' total requested fees award (minus the deductions noted above) to "trim the fat," because Respondents' practice of "block-billing" makes it difficult to assess the reasonableness of every entry, and it appears that some tasks may have been duplicative or may have been more efficiently performed by a more junior attorney.

"Block-billing is the practice 'of aggregating multiple tasks into one billing entry.'" *Wise* v. *Kelly*, 620 F. Supp. 2d 435, 450 (S.D.N.Y. 2008) (citing *Molefi* v. *Oppenheimer Trust*, No. 03 Civ. 5631 (FB) (VVP), 2007 WL 538547, at

13

\*7 (E.D.N.Y. Feb. 15, 2007)).  While block-billing renders it difficult, if not impossible, for the court to evaluate the reasonableness of the time spent on a given task, block-billing is "not prohibited" in the Second Circuit.  *Id.*; *see also Green* v. *City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (summary order) (affirming district court's 15% across-the-board reduction of hours based on pervasive block billing in time entries submitted by counsel, concluding that the practice raised questions regarding the reasonableness of the entries).  Rather than attempt to identify specific hours that should be eliminated for duplication of efforts or vagueness, a court is permitted to make a simple reduction in the number of hours to "trim[] fat from a fee application."  *McDonald*, 450 F.3d at 96 (citing *Kirsch,* 148 F.3d at 173 (deducting a "reasonable percentage of the number of hours claimed" to account for "excessive, redundant, or otherwise unnecessary" hours)); *see also N.Y. Assoc. for Retarded Children* v. *Carey,* 711 F.2d 1136, 1146 (2d Cir. 1983) (recognizing that because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," a specific percentage cut is "a practical means of trimming fat from a fee application").

In this case, Respondents' time was "block-billed," and there appear to be some redundancies and inefficiencies.  For example, towards the end of October and the beginning of November 2013, of counsel Bishop billed for numerous hours of legal research on basic legal principles that could have been handled by a more junior attorney (Bauman Decl. Ex. A at 8).  *See, e.g.*, *Tlacoapa* v. *Carregal,* 386 F. Supp. 2d 362, 372 (S.D.N.Y. 2005) (making an

14

across-the-board reduction where, among other deficiencies in fee application, hours billed by a senior attorney for legal research could have been performed by a junior associate). Moreover, tasks like research were frequently lumped together with tasks like drafting papers or reviewing documents (*see, e.g.*, Bauman Decl. Ex. A. at 8), which makes it impossible for the Court to determine the reasonableness of specific charges. *See Green*, 403 F. App'x at 630 ("[T]he obfuscation inherent in block billing frequently renders it impossible to determine the reasonableness of specific charges aggregated within the block billing." (citation and quotation marks omitted)). Accordingly, the Court finds it appropriate to take an overall reduction of 15% from the fees requested by Respondents.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part Respondents' request for attorneys' fees. From the requested fees figure of $62,615.00, the Court deducts $1,525.00 for time billed in relation to the two settlement conferences and $2,000.00 for time billed in connection with the instant application for the attorneys' fees. From the new total of $59,090.00, the Court imposes an across-the-board reduction of 15% ($8,863.50) for Respondents' duplicate entries and instances of "block billing." Adding in $1,458.33 for allowable costs, Respondents are entitled to attorneys' fees and costs in the amount of **$51,684.83**.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:   December 8, 2014
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge